IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PMI NEBRASKA, LLC,<br><br>    Plaintiff and counterclaim defendant,<br><br>and<br><br>COLIN MCCLURE,<br><br>    Counterclaim defendant,<br><br>vs.<br><br>DAVID NORDHUES, et al.,<br><br>    Defendants and counterclaimants. | 4:18-CV-3126<br><br><br><br>MEMORANDUM AND ORDER |

       This matter is before the Court on the plaintiff's motion for a preliminary injunction ([filing 18](#)). The plaintiff's primary claims are that the defendants, former employees of the plaintiff, breached their duties to the plaintiff by forming a competing business before leaving their employment, and are competing with the plaintiff using trade secrets they took from the plaintiff. But the plaintiff's evidence of trade secrets is sparse at best, and the defendants were not subject to any noncompete or confidentiality agreements—so, the plaintiff has not persuaded the Court that what happened in the past, even if actionable, can justify a forward-looking preliminary injunction. Accordingly, the plaintiff's motion will be denied.

BACKGROUND

The plaintiff, PMI Nebraska, describes itself as "a specialty millwright contractor providing services such as repairs, rebuilding, renovations, and equipment installation to material-handling industries across the state." Filing 19 at 2.[1] Two of the three defendants, David Nordhues and Chris Golick, were previously employed by PMI Nebraska: Nordhues as Vice President of Operations, and Golick as a project coordinator. Filing 18-2 at 2; *see* filing 40 at 1; filing 40-1 at 1. The remaining defendant, Precision Ag Construction, LLC, was formed by Nordhues and Golick. Filing 40 at 1; filing 40-1 at 1.

Nordhues and Golick each resigned from PMI Nebraska on May 29, 2018. Filing 18-2 at 3; filing 40 at 1; filing 40-1 at 1. PMI Nebraska's case rests on what they were allegedly doing before then. PMI Nebraska's evidence suggests Nordhues and Golick were planning to form Precision Ag at least a couple of weeks before they actually did so. *See* filing 18-2 at 7, 9-21. And the defendants don't seem to meaningfully dispute that. *See* filing 20 at 2 ¶11.

PMI Nebraska's President, Colin McClure, also avers that "Nordhues and Golick, while employed by PMI, had direct access to and knowledge of client contact information, other employees' salaries and wages, the process by which prices are calculated and bids produced, and PMI-specific bid format templates that were developed by PMI employees for PMI use only." Filing 18-2 at 2. McClure contends that before resigning, "Nordhues and Golick downloaded protected information from PMI-owned computers including but not limited to: protected drawings, plans, bid formats, rate sheets and handbooks." Filing 18-2 at 3. As support for that claim, McClure asserts that Nordhues and Golick "deleted evidence of transferring such data, which was

---

[1] While this information was in PMI's brief, the Court can't find it in any actual evidence, or even the pleadings. But it provides helpful context, and doesn't appear to be disputed.

revealed by computer forensic analysis, which [he] ordered after [they] began engaging in competitive activity." Filing 18-2 at 3. No such forensic analysis, however, is in the record.

PMI Nebraska also makes allegations regarding three projects that, it says, are "illustrative." Filing 42 at 11. First, PMI Nebraska claims that on May 15, Nordhues visited a potential project for Aurora Cooperative Sedan Dust Control. Filing 18-2 at 2. McClure said it was his understanding that Aurora Coop would simply contact PMI Nebraska when the materials were available to do the work. Filing 42-2 at 3. But, when a PMI Nebraska employee called Aurora Coop to follow up on July 5, Aurora Coop said that PMI Nebraska hadn't been awarded the project. Filing 18-2 at 2. Instead, Precision Ag was awarded the project, which McClure estimates would have been worth $3,500-4,500 to PMI Nebraska. Filing 18-2 at 2. Nordhues, however, said that to his knowledge, PMI Nebraska never bid for the project—instead, he avers that Aurora Coop contacted him in early July 2018 about the job, which Precision Ag performed. Filing 40 at 1-2.

The second potential project was for Scoular Grain, with whom McClure, Nordhues, and Golick allegedly met while they all worked for PMI Nebraska. Filing 18-2 at 2. And, McClure says, he and Nordhues visited a similar site to prepare a bid for the Scoular project. Filing 18-2 at 2. Golick made a drawing of measurements taken at the site. Filing 18-2 at 3. But according to McClure, before leaving PMI Nebraska, Nordhues set up a May 29 meeting with Scoular that wasn't for PMI Nebraska. Filing 18-2. Nordhues avers, however, that while Precision Ag bid for the Scoular project, that bid wasn't selected, and Precision Ag is no longer a bidder. Filing 40 at 2.

The final potential project was in Lexington, Nebraska for Gavilon Grain: apparently, a representative of PMI Iowa (by all appearances a different

company) who visited the site on August 8, 2018 noticed that Nordhues and Golick had already visited. Filing 18-2. McClure says he had mentioned the possibility of a Gavilon project in Lexington to Nordhues sometime in early 2018. Filing 42-2 at 4. McClure avers, conclusorily, that "[o]n information and belief, Defendant Nordhues utilized the information obtained during his employment with PMI to unfairly outbid or otherwise compete with PMI." Filing 18-2 at 5. The basis for that "information and belief" isn't explained, and Nordhues and Golick each aver that during their employment with PMI Nebraska, they were never informed about Gavilon's Lexington project: instead, a representative of Gavilon had contacted Nordhues in late July and asked for a quote. Filing 40 at 2; filing 40-1 at 2. And, they say, PMI Nebraska itself didn't actually bid on the Gavilon project. Filing 40 at 3; filing 40-1 at 2.[2]

More generally, Nordhues and Golick say that during their employment with PMI Nebraska, they weren't aware of any customer list. Filing 40 at 3; filing 40-1 at 2. And, they say, Precision Ag isn't using and wouldn't use any bid materials, confidential information, or trade secrets learned while working at PMI Nebraska. Filing 40 at 4; filing 40-1 at 3. But McClure insists that PMI Nebraska has a "client contact and vendor list" he knows "was downloaded and removed by Defendants Nordhues and Golick based on forensic analysis of the devices Defendants used that [he] reviewed to determine what all documents, lists, and drawings that they took." Filing 42-2 at 2.

---

[2] The president of PMI Iowa did aver that he had been informed PMI Nebraska had turned down the project, but said he had informed McClure "that PMI Iowa would bid the project, and if it started after the new year, [he] would pass it over to PMI Nebraska." Filing 18-3 at 2. However, no evidence of an actual bid has been presented.

DISCUSSION

PMI Nebraska is alleging 6 claims for relief: (1) "Misappropriation of Confidential Information"; (2) breach of fiduciary duty by Nordhues; (3) breach of duty of loyalty by Golick; (4) civil conspiracy; (5) conversion; and (6) violation of the federal Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030. Filing 1-1 at 4-8. In this motion, PMI Nebraska seeks a preliminary injunction barring the defendants from "any attempt . . . to bid on or engage in any project first learned of, measured, or investigated while employed with [PMI Nebraska]" or "using, or attempting to use, or conspiring with one another or other parties to use [PMI Nebraska]'s confidential information to gain unfair and unlawful commercial advantage." Filing 18 at 3.

When deciding whether to issue a preliminary injunction, the Court weighs the four *Dataphase* factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1098 (8th Cir. 2013) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety. *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Ordinarily, the Court would discuss each of the *Dataphase* factors separately. In this case, however, it will be clearer to discuss irreparable harm and the likelihood of success on the merits of each of PMI Nebraska's claims, claim-by-claim, because there's a mismatch: while PMI Nebraska may have a likelihood of succeeding on some of its claims, none of those claims present a

threat of future irreparable harm, and conversely, PMI Nebraska has not shown a likelihood of succeeding on any of the claims for which it alleges ongoing damages.

## CIVIL CONSPIRACY

PMI Nebraska begins by touting its civil conspiracy claim. Filing 19 at 5. That's an interesting choice to lead off with, though, because a civil conspiracy claim is entirely derivative: a civil conspiracy is a combination of two or more persons to accomplish by concerted action an unlawful or oppressive object, or a lawful object by unlawful or oppressive means. *Salem Grain Co., Inc. v. Consol. Grain & Barge Co.*, 900 N.W.2d 909, 923 (Neb. 2017). So, a "conspiracy" is not a separate and independent tort in itself, but, rather, is dependent upon the existence of an underlying tort. *Id.* at 924. In other words, a "civil conspiracy" is just a method for imposing joint and several liability on everyone who committed wrongful acts in furtherance of the conspiracy. *Id.* And that means PMI Nebraska isn't entitled to an injunction based on the merits of its civil conspiracy claim unless it can show the propriety of an injunction based on the merits of some other claim.

## BREACH OF DUTY OF LOYALTY

Next, PMI Nebraska argues that it "will succeed on the merits of its claims that Defendants Golick and Nordhues breached their duty of loyalty to PMI." Filing 19 at 6. But PMI Nebraska's complaint accused only Golick of breaching a duty of *loyalty*. Filing 1-1 at 5-6. PMI Nebraska did not discuss its separate claim against Nordhues for alleged breach of *fiduciary* duty, though—so, apparently PMI Nebraska has decided to elide the distinction between those two claims.

But even if the Court now regards PMI Nebraska as asserting a breach

of loyalty claim against Nordhues, the problem for PMI Nebraska—although not completely fatal to the claim—is the lack of an agreement barring Nordhues or Golick from competing with PMI Nebraska. True, under Nebraska law, it is a generally recognized principle that an employee owes a duty of loyalty to his employer during the course of his employment, irrespective of the existence of a covenant not to compete or nonsolicitation clause. *W. Plains, L.L.C. v. Retzlaff Grain Co. Inc.*, 870 F.3d 774, 786 (8th Cir. 2017). But it is also true that

> [a]fter the termination of his agency, in the absence of a restrictive agreement, the agent can properly compete with his principal as to matters for which he has been employed. Even before the termination of the agency, he is entitled to make arrangements to compete, except that he cannot properly use confidential information peculiar to his employer's business and acquired therein. Thus, before the end of his employment, he can properly purchase a rival business and upon termination of employment immediately compete. He is not, however, entitled to solicit customers for such rival business before the end of his employment nor can he properly do other similar acts in direct competition with the employer's business.

*Prof'l Bus. Servs. Co. v. Rosno*, 680 N.W.2d 176, 189 (Neb. 2004) (quoting Restatement (Second) of Agency § 387 at 201 (1958) (emphasis omitted) (cleaned up).

With those principles established, the Court is willing to credit PMI Nebraska with some likelihood of succeeding on this claim. After all, while Nordhues and Golick didn't act tortiously by preparing to establish a

competing business before they resigned, there is at least some evidence that they began to *compete* before resigning, and that might support liability. But the problem for PMI Nebraska is that all that's in the past. After all, because neither Nordhues nor Golick was subject to any restrictive covenant, whatever duty they owed PMI Nebraska ended with their employment—and they can no longer injure PMI Nebraska by breaching nonexistent duties.

A preliminary injunction cannot issue without a showing of irreparable harm. *Dataphase*, 640 F.2d at 114 n.9. To show a threat of irreparable harm, the movant must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief. *Roudachevski*, 648 F.3d at 706. Stated differently, the harm "must be actual and not theoretical." *Brady v. Nat'l Football League*, 640 F.3d 785, 794 (8th Cir. 2011). And harm is not irreparable when a party can be fully compensated for its injuries through an award of damages. *Gen. Motors Corp. v. Harry Brown's, LLC,* 563 F.3d 312, 319 (8th Cir. 2009).

PMI Nebraska has not presented evidence suggesting a threat of imminent harm resulting from any of the three projects it can actually identify: the Aurora Coop project is complete, Precision Ag is no longer a bidder for the Scoular project, and PMI Nebraska didn't bid for the Gavilon project in Lexington. (Nor is there evidence PMI Iowa did either, to the extent that PMI Iowa might have been acting as a stalking horse for PMI Nebraska.) So, with respect to PMI Nebraska's breach of loyalty claim(s), the damage is done. No further harm is imminent, nor could it be. Furthermore, the only harm PMI Nebraska might have suffered can be compensated with money damages.

PMI Nebraska suggests the three projects it specifically identified are "examples" that are "illustrative, not exhaustive." But illustrative of what? It is the movant's burden to "demonstrate that irreparable injury is *likely* in the

absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original); *see Minn. Bearing Co. v. White Motor Corp.*, 470 F.2d 1323, 1326 (8th Cir. 1973). PMI Nebraska cannot carry that burden by pointing to examples—even "illustrative" ones—that do not actually illustrate a likelihood of any injury, much less irreparable injury.

McClure did aver that "[o]n information and belief, Defendants Nordhues and Golick, by and through Defendant Precision Ag, have solicited customers, vendors, suppliers, and employees to leave PMI and utilize or work for Precision Ag." Filing 18-2 at 6. The Court might be more persuaded by that "information and belief" could PMI Nebraska name any who actually did so.[3] PMI Nebraska also argues it has "established irreparable harm by the actual and threatened loss of customer relationships and goodwill due to Defendants' improper actions," and that "the current threat to [PMI Nebraska's] reputation and goodwill remains." Filing 19 at 11; filing 42 at 13. But that argument, too, is unsupported by actual *evidence*: the only evidence relating to PMI Nebraska's goodwill was McClure's opinion that Precision Ag was unfairly benefitting from it, but he did not opine that PMI Nebraska's goodwill was itself being damaged by the defendants. *See* filing 42-2 at 4. And in any event, "beyond just asking the [C]ourt to trust its assessment that these harms are

---

[3] Nor is it obvious that any such solicitation would be wrongful, if it occurred after Nordhues and Golick resigned. Similarly, McClure avers that he has "heard from business contacts" that the defendants "have told current and potential customers that PMI does not have the capacity to complete the work necessary for the customer." Filing 18-2 at 5. But it's not clear which (if any) of PMI Nebraska's claims that would support, or that such conduct would be actionable. While PMI Nebraska is determined to "chronicl[e] [the defendants'] alleged misdeeds, regardless of their relevance to the motion[,]" it is not the Court's responsibility "to try to then connect the dots between [PMI Nebraska]'s allegations and its legal theories." *Mgmt. Registry, Inc. v. A.W. Companies, Inc.*, 920 F.3d 1181, 1184 (8th Cir. 2019).

unquantifiable, it never persuasively explained why money damages could not compensate it for these losses as well." *Mgmt. Registry*, 920 F.3d at 1184; *see also Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 894-95 (8th Cir. 2013).

MISAPPROPRIATION OF TRADE SECRETS

PMI Nebraska contends that it is likely to succeed on its trade secrets claim, which it brings pursuant to the Nebraska Trade Secrets Act, Neb. Rev. Stat. §§ 87-501 *et seq*. *See* filing 1-1 at 4; filing 19 at 7. PMI Nebraska argues that "the information taken from PMI's computers, particularly the bid forms, safety protocols, and project drawings, constitute trade secrets." Filing 19 at 8. But that's far from clear to the Court. Under Nebraska law, a "trade secret" is defined as information that:

> (a) Derives independent economic value, actual or potential, from not being known to, and not being ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

§ 87-502(4). That definition is narrow; it means that "if an alleged trade secret is *ascertainable at all* by any means that are not 'improper,' the would-be secret is peremptorily excluded from coverage under the Act." *First Express Servs. Grp., Inc. v. Easter*, 840 N.W.2d 465, 474 (Neb. 2013) (emphasis in original) (citations and quotations omitted).

So, for instance, in *Easter*, the Nebraska Supreme Court concluded that the Trade Secrets Act did not protect the customer list of a company that sold crop insurance, which included "customers' names and their 2009 information:

what crops the farmers had, what counties the crops were located in, what insurance plan the farmers bought, what percentage of coverage each farmer had, and what commission [the insurer] had earned." *Id.* at 469. The court explained that "simple Internet searches could identify which farmers farmed what land and could provide contact information for those farmers." *Id.* at 475. And the other

> information on the list essentially reflected the farmers' previous insurance coverage on their crops. It is undisputed that the individual farmers had all of that information and that [the defendant] could have obtained the information from them through a simple telephone call. Also, once a customer changed agencies, all of the customer's prior insurance information became available from the insurance carrier's Web site. Though the exact information required to transfer a customer is a bit unclear, the record shows that, at most, all that is required is the customer's name, address, type of crops, and signature, all of which are ascertainable by proper means.

*Id.* So, because the information on the customer list was ascertainable through proper means, the court concluded as a matter of law that it was not a trade secret. *Id.* at 476.

On the other hand, in *Home Pride Foods, Inc. v. Johnson,* the Nebraska Supreme Court held that there was sufficient evidence to find that the customer list of a food service company *was* a trade secret, because "the customer list contained information not available from publicly available lists." 634 N.W.2d 774, 782 (Neb. 2001). The court explained that, while courts "are reluctant to protect customer lists to the extent that they embody information

that is readily ascertainable through public sources[,]" a customer list will be protected "where time and effort have been expended to identify particular customers with particular needs or characteristics," because "[s]uch lists are distinguishable from mere identities and locations of customers that anyone could easily identify as possible customers." *Id.* at 781-82.

But in this case, the Court cannot tell from McClure's summary description of the data that was allegedly taken what that data even was, much less whether it included trade secrets. McClure's reference to "protected drawings, plans, bid formats, rate sheets and handbooks" does little to place them within the definition of "trade secret" under Nebraska law, either by establishing their "independent economic value" or that they are not "ascertainable by proper means." Filing 18-2 at 3; *see* § 87-502(4)(a).[4] McClure's contention that the "downloaded information . . . derives its value from not being known to the public, because it is relevant to the calculation of competitive bids" isn't helpful when his claim "[o]n information and belief" that the defendants used the information "to under-bid PMI or otherwise unfairly compete with PMI" is unsupported by an instance in which they actually did so, or appear to be doing so. Simply put, Nordhues and Golick each averred that Precision Ag isn't using any confidential information or trade secrets, and

---

[4] The Court also questions whether PMI Nebraska has presented sufficient evidence of "misappropriation," *see* § 87-502(1) & (2), when the only evidence in the record that electronic data was taken is McClure's hearsay description of a "forensic analysis" not otherwise described. The Court is aware that use of the Federal Rules of Evidence in deciding motions for preliminary injunction is at best muddled. *See generally* Maggie Wittlin, *Meta-Evidence and Preliminary Injunctions*, 10 U.C. Irvine L. Rev. (forthcoming 2019-20), https://ssrn.com/abstract=3356215. But the threadbare evidence here with respect to the "forensic analysis" does nothing to establish the admissibility of that analysis, much less a basis to give it any weight.

PMI Nebraska has presented little to suggest otherwise.

All of that leads the Court to conclude that PMI Nebraska hasn't shown a likelihood of success on the merits of this claim—and, in deciding whether to grant a preliminary injunction, likelihood of success on the merits is the most significant factor. *Laclede Gas Co. v. St. Charles Cty.*, 713 F.3d 413, 419-20 (8th Cir. 2013). A party seeking injunctive relief need not necessarily show a greater than 50 percent likelihood that it will prevail on the merits. *Planned Parenthood Minnesota, North Dakota, South Dakota v. Rounds*, 530 F.3d 724, 731 (8th Cir. 2008). But the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied. *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013). And the Court will take that suggestion with respect to this claim.

Nor, for the sake of completeness, is the Court persuaded that PMI Nebraska has made a showing of irreparable harm on this claim. The Court recognizes that as a general matter, an injunction may issue to prevent the unauthorized disclosure and use of trade secrets. *E. W. Bliss Co. v. Struthers-Dunn, Inc.*, 408 F.2d 1108, 1112 (8th Cir. 1969). But PMI Nebraska's ability to show irreparable harm is significantly undermined by its failure to clearly identify and explain the alleged trade secrets at issue. Other than PMI Nebraska's assertion that the information is "relevant to the calculation of competitive bids," the Court has little to assess how the information might be used, what harm might result, or why that harm (if it existed) couldn't be remedied by money damages. Filing 18-2 at 2, 4.

## CONVERSION

Next, PMI Nebraska contends that it is likely to succeed on its conversion claim because, it says, it has shown a "distinct act of dominion wrongfully asserted over another's property in denial of or inconsistent with

that person's rights." Filing 19 at 8 (citing *Spear T Ranch, Inc. v. Knaub*, 691 N.W.2d 116, 126-27 (Neb. 2005)). But it hasn't.

Conversion is any unauthorized or wrongful act of dominion exerted over another's property which deprives the owner of his property permanently or for an indefinite period of time. *Peterson v. Homesite Indem. Co.*, 840 N.W.2d 885, 894 (Neb. 2013). The essence of conversion is not acquisition by the wrongdoer, but the act of depriving the owner wrongfully of the property—in other words, the *effect* on the rightful owner. *Zimmerman v. FirsTier Bank*, 585 N.W.2d 445, 452 (Neb. 1998); *see COR Clearing, LLC v. Calissio Res. Grp., Inc.*, 918 F.3d 579, 585 (8th Cir. 2019). And PMI Nebraska's allegations, even accepted as true, do not support a claim for conversion, because there is no indication Nordhues or Golick deprived PMI Nebraska of its proprietary information by, for example, deleting or destroying files.

Stated another way, conversion of intangible property cannot occur where the plaintiff "still has the information that the defendant[s] allegedly appropriated." *Superior Edge, Inc. v. Monsanto Co.*, 964 F. Supp. 2d 1017, 1039 (D. Minn. 2013); *see Zimmerman*, 585 N.W.2d at 452; *see also Malone v. Kantner*, 2015 WL 5156861 at *15 n. 6 (D. Neb. Sept. 2, 2015); *Election Sys. & Software, LLC v. RBM Consulting, LLC*, No. 8:11-CV-438, 2015 WL 13484484, at *12 (D. Neb. Feb. 4, 2015); *ACI Worldwide Corp. v. MasterCard Techs., LLC*, 2014 WL 7409750, at *8–9 (D. Neb. Dec. 31, 2014). And in this case, PMI Nebraska does not allege that it was deprived of access to the data at issue. So, it has shown no likelihood of success on its conversion claim, nor any threat of the sort of injury necessary to a conversion claim.

### CFAA

Finally, PMI Nebraska argues that it's likely to succeed on its CFAA claim because Nordhues and Golick allegedly used their authorized access to

PMI Nebraska's computers for unauthorized purposes. Filing 19 at 9-10. But to begin with, as explained above, PMI Nebraska's evidence is far from compelling on that point: it relies entirely on McClure's conclusory assertion of a "forensic analysis" that isn't before the Court. That, the Court finds, falls far short of showing that PMI Nebraska is likely to succeed in proving that Nordhues or Golick violated federal law.

Moreover, the Court notes that there is a lurking legal question which neither party addresses: whether the CFAA extends to violations of policies regarding the use of information on a computer to which a defendant otherwise has access. *See generally United States v. Valle*, 807 F.3d 508, 524 (2d Cir. 2015) (collecting cases). And a number of courts have persuasively concluded that under the CFAA, a user who is otherwise authorized to access information on a protected computer does not act "without authorization" or "exceed[] authorized access" by violating restrictions on the *use* of that information. *See WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 207 (4th Cir. 2012); *United States v. Nosal*, 676 F.3d 854, 863-64 (9th Cir. 2012); *see also Valle*, 807 F.3d at 528.

The Court need not definitively resolve that question of law at this point, however, to conclude that PMI Nebraska's failure to address the question undermines its ability to show that it is likely to succeed on its claim. So, PMI Nebraska hasn't shown it would succeed on its CFAA claim, even if it could prove the facts it alleges—but, more importantly, the evidence it has presented doesn't sufficiently demonstrate that it is likely to be able to prove those facts. Nor, for that matter, has PMI Nebraska shown a likelihood of irreparable harm, for the reasons explained above with respect to its trade secrets claim.

REMAINING *DATAPHASE* FACTORS

The discussion above is essentially dispositive of PMI Nebraska's motion.

But, for the sake of completeness, the Court finds that the balance of harms between the parties is essentially nonexistent: PMI Nebraska has not shown a threat of imminent harm, but it is also hard to see how the defendants would be harmed by enjoining them from conduct that, at least according to them, they aren't engaged in anyway. And there is no evident effect on the public interest one way or the other. But given the Court's previous findings, it is apparent that a preliminary injunction is unwarranted.

>IT IS ORDERED that PMI Nebraska's motion for a preliminary injunction ([filing 18](filing 18)) is denied.

>Dated this 6th day of August, 2019.

>BY THE COURT:
>
>John M. Gerrard
>Chief United States District Judge